## SMITHSON et al. v. LOVE.

No. 18286.    Opinion Filed June 19, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

1. **Contracts—Rights Springing from Illegal Contract Unenforceable.**

When the plaintiff declares upon an action that is necessarily based upon an illegal contract, the courts will neither enforce such contract nor the alleged rights directly springing therefrom.

2. **Gaming—Action on Note Given in Satisfaction of Wagering Contract—Judgment for Defendant Sustained.**

Record examined, and held, sufficient to support the judgment of the trial court.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by D. B. Smithson and O. E. Stewart against C. E. Love. Judgment for defendant, and plaintiffs bring error. Affirmed.

Erwin & Erwin, for plaintiffs in error.

Pounders & Pounders, for defendant in error.

HEFNER, J. The plaintiffs in error, as plaintiffs, sued the defendant in error, as de-

fendant, to recover on a promissory note in the sum of $1,336, upon which a payment of $300 had been made, and for the foreclosure of a mortgage given to secure the payment of the same. The defendant pleaded a general denial and alleged that the note was void because it grew out of a wager and was given in satisfaction of a bet the plaintiffs and defendant made as to whether a certain oil well then drilling would produce oil or be a dry hole. The plaintiffs filed a reply wherein they alleged that the consideration for the note was valid and the contract was not a wager; that had the well been a producer, both parties would have been advantageously affected. A copy of the agreement was attached to the reply and is as follows:

"This contract made and entered into this 17th day of December, 1924, by and between D. B. Smithson and O. E. Stewart, first parties, and C. E. Love, second party, witnesseth:

"That first parties have this day sold and delivered to the second party one new Ford coupe, fully equipped, for the consideration of ten and no/100 ($10) dollars, receipt of which is hereby acknowledged, and the further consideration hereinafter expressed.

"That the second party agrees to purchase said new Ford coupe, fully equipped, for the said cash consideration of ten and no/100 ($10) dollars, and the further consideration hereinafter recited.

"That the first parties, being the owners of the following described real estate located in Lincoln county, Okla., to wit: north half of the northeast quarter of section 22, township 15 north, range 2 east of the Indian Meridian, which is in the immediate proximity of a certain test oil and gas well now being drilled by the firm of second party, as contractors, on the southeast corner of said quarter section, and second party being under contract with the Howarth Oil & Gas Company for the drilling of said well to the depth of 4,500 feet, unless oil or gas in paying quantities is struck at a lesser depth; and all parties hereto consequently being financially interested in the success of the drilling of said well, it is further agreed between the parties hereto that in the event that oil or gas in paying quantities is not struck in said well before the final completion thereof by second party, or his firm, or their assignees, that the second party will pay first parties the additional sum of thirteen hundred twenty-six and no/100 ($1,326) dollars; but that in the event that oil or gas in paying quantities is struck in said well by second party or his firm or their assignees, then in that event no further consideration, except the cash payment of $10, shall be due to first parties, but the first parties hereby state and declare that they give to the second party the remaining consideration for said new Ford coupe as a free and voluntary gift, and that they at such time will execute a release of this contract, and a receipt in full of all balance of consideration due for said car."

After it had been determined that the test for oil and gas was dry, the note and mortgage sued on herein were executed in settlement of the controversy between plaintiffs and the defendant.

After the evidence by both parties had been offered, both the plaintiffs and the defendant moved for a directed verdict. The court sustained the motion of the defendant and directed a verdict in his favor, and judgment was entered accordingly.

The theory of the trial court was that the sales contract was a wager contract, and therefore unenforceable.

In a wager contract one must make and the other lose. Had the well produced oil or gas in paying quantities, the defendant would have gotten the Ford car for $10. He would thereby make the difference between $10 and the purchase price of the car, and the plaintiffs would thereby lose the difference between $10 and the purchase price of the car. Had the well been a producer, since the plaintiffs owned adjacent land to the drilling well, they would have made more money on the increased value of their land than they would have lost on the car. Notwithstanding this, we do not think it removes the contract from those generally designated as wager contracts.

It might be contended that after the well was drilled, the defendant made a voluntary settlement of the wager when he executed the note on which suit was brought, and, because of this settlement, it could not be shown that the note was given in consideration of the wager.

This is not tenable, because in the case of Embrey v. Jemison, 33 L. Ed. (U. S.) 172, long after the controversy had arisen between the plaintiff and defendant in that case, the defendant executed his promissory notes in settlement of the controversy. The plaintiff afterwards brought suit on the notes, and the case was appealed to the Supreme Court of the United States, and that court said:

"Assuming the averments of the plea of wager to be true, it is clear that the plaintiff could not recover upon the original

agreement without disclosing the fact that it was one that could not be enforced or made the basis of a judgment. He cannot be permitted to withdraw attention from this feature of the transaction by the device of obtaining notes for the amount claimed under that illegal agreement; for they are not founded on any new or independent consideration, but are only written promises to pay that which the obligor had verbally agreed to pay. They do not, in any just sense, constitute a distinct or collateral contract based upon valid consideration. Nor do they represent anything of value, in the hands of the defendant, which, in good conscience, belongs to the plaintiff or to his firm. Although the burden of proof is on the obligor to show the real consideration, the execution of the notes could not obliterate the substantive fact that·they grew immediately out of, and are directly connected with, a wagering contract. They must, therefore, be regarded as tainted with the illegality of that contract."

Again, in the case of McMullen v. Hoffman, 43 L. Ed. (U. S.) 1124, the Supreme Court of the United States announced the rule as follows:

"Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A. stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded upon its violation.

"'These authorities uphold the principle that the whole case may be shown, and the plaintiff cannot prevent it by proving only so much as might sustain his cause of action, and then objecting that the defendant himself brings in the balance which was not necessary for plaintiff to prove."

Under these authorities, the plaintiffs cannot recover herein, because the note was executed in pursuance of a wager agreement.

The judgment of the trial court is affirmed.

MASON, V. C. J., and PHELPS, LESTER, and RILEY, JJ., concur. ·

Note.—See under (1) 13 C. J. p. 493, §440, (2) 27 C. J. p. 1070, §298.